Carlton Sidney **DANIELS**

v.

**Otis L. BROWN, Director, Dept. of Welfare & Institutions.**

**Civ. A. No. 307–69–R.**

United States District Court, E. D. Virginia, Richmond Division.

Nov. 1, 1972.

Michael Armstrong, Richmond, Va., for plaintiff.

Burnett Miller, III, Vann H. Lefcoe, Asst. Attys. Gen. of Va., Richmond, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

The plaintiff, a Virginia prisoner, commenced this action in July 1969 to redress alleged constitutitonal deprivations with respect to administrative punitive measures taken against him for his alleged participation in a prison work stoppage in July 1968. Jurisdiction is attained by virtue of 42 U.S.C. § 1983 and 28 U.S.C. § 1343.

In his original prayer for relief, Daniels sought to have the administrative sanctions complained of voided for lack of due process. This Court initially dismissed the complaint for failure to state a claim which was cognizable under the Court's limited jurisdictional powers. That dismissal was reversed by the United States Court of Appeals for the Fourth Circuit in January 1970, and the action herein was remanded for further determination of whether the actions of the prison officials complained of were in fact arbitrary or without explanation. Subsequent to the Court of Appeals' decision, this Court decided Landman v. Royster, 333 F.Supp. 621 (E.D.Va.1971), a class action. Daniels was a member of the plaintiff class and, accordingly, by virtue of the Court's order in *Landman*, he was granted the relief sought initially herein. The sole remaining issues before the Court, raised at an *ore tenus* hearing held February 14, 1972, deal with the collateral effects of said administrative sanctions upon further administrative proceedings with regard to the plaintiff.

The facts have been stipulated by the parties and are as follows:

Plaintiff was received for custody by the Virginia Division of Corrections on December 4, 1967.

On January 7, 1968, plaintiff was placed on report for allegedly forcing another inmate to submit to an act of sodomy. Plaintiff was placed in punitive segregation on January 11, 1968, and lost all accumulated good time.

On January 30, 1968, plaintiff was released from punitive segregation. On the following day he was transferred from the receiving unit to the general population and assigned to work in the Tag Shop.

On July 19, 1968, plaintiff, along with the majority of the inmate population, was placed in "Padlock" status as a result of the inmate work stoppage on that date. On that date plaintiff was placed on report for allegedly agitating and encouraging inmates not to accept aspirin from a guard who was dispensing it. Plaintiff on July 19, 1968, was also transferred from an assignment in the Tag Shop to an "Unassigned" work status.

On September 11, 1968, plaintiff was placed on report for destroying State property and for attempting to pass articles to another cell in violation of regulations. Plaintiff was transferred to punitive segregation from September 13, 1968, to September 27, 1968, at which time he was released to "Unassigned" status.

On January 2, 1969, while still unassigned and awaiting reassignment, plaintiff was placed on report for allegedly continually creating a disturbance in the cell house. He was placed in punitive segregation from January 3, 1969, to January 15, 1969, whereupon he was returned to an unassigned status.

On April 15, 1969, plaintiff was placed in punitive segregation for allegedly making excess noise after being warned, refusing to give up his food tray and profane language to another inmate. Plaintiff was released from segregation on April 30, 1969, and returned to unassigned status pending action by the Institutional Classification Committee.

On May 28, 1969, the Institutional Classification Committee transferred plaintiff to administrative segregation

in "C" Building. This action was allegedly based on plaintiff's unruly nature, to-wit: his prior disciplinary record, his belligerent and insolent behavior, and his lack of respect for authority and institutional regulations.

On March 16, 1970, after a personal interview with plaintiff, it was felt that plaintiff should be given another opportunity to adapt and adjust in the general prison population. The Institutional Classification Committee transferred him, on that date, to the general population, assigned to the Metal Shop.

On September 29, 1970, plaintiff allegedly refused to work on the grounds that his life was in danger because of money owed to other inmates. The Adjustment Committee, after a hearing, gave plaintiff the choice of going to work or going to isolation. Plaintiff chose isolation. He was assigned there from October 8, 1970, to October 19, 1970. Upon his release from isolation, plaintiff was assigned to administrative segregation in "C" Building. This action was recommended by the Adjustment Committee at the time he was sent to isolation and based on the possibility that the allegedly unproven threats were true, and because this situation was further indicative of his failure to adjust.

The disciplinary proceedings, by which plaintiff was punished did not comply with the Constitution requirements of due process as stated in Landman v. Royster, 333 F.Supp. 621 (U.S. D.C., E.D.Va.1971).

Plaintiff was released on November 3, 1971, from "C" cell; his "good time" has been restored to him; however, he is on six months probation within the institution.

The plaintiff will be eligible for parole on August 11, 1973, and his present term expires on March 11, 1983.

Records of plaintiff's prison violations will be available to the Classification Committee in determining what level of security he should be placed in. His records will also be available to the Parole Board on request in determining whether to grant parole. His record cannot be used by the Adjustment Committee in determining punishment, if he were to commit a further violation of prisoners' rules. Status of prison probation means that he is subject to being reassigned to "C" cell for lesser infractions than those of other inmates not in prison probation. [It appears to the Court that the plaintiff is now off probation.]

The sole issues remaining are whether:

1. The plaintiff has a right to a retrial for the alleged infractions.

2. The plaintiff has a right, in the alternative, to expunge from his records the administrative convictions voided pursuant to *Landman, supra.*

 Because the plaintiff is no longer on administrative probation, the issue of whether said probation was legal in the aftermath of *Landman* is now moot. Accordingly, the Court will not reach said issue.

*Right to Retrial*

 In *Landman, supra,* the Court granted the State leave to retry within 60 days any prisoner released from C-cell security by virtue of the order therein. The State chose not to retry Daniels after his release. The Court did not make a determination in *Landman* as to whether a *prisoner* had a right to retrial for the purpose of "clearing his name" from any wrongdoing ascribed to him under pre-*Landman* administrative charges. That course is now urged upon the Court by the plaintiff.

If the prison system of administrative accusation and trial thereon be analogyzed to the public court system of criminal accusation and trial, the Court would find that the decision of whether or not to retry an accused rests solely upon prosecutional discretion. Accordingly, the analogy suggests to the Court that prison officials alone have the right to cause a retrial. The plaintiff might well argue that the analogy is faulty in that the Court's voiding of a prior administrative prison conviction does not exonerate the accused in the same man-

ner as the voiding of a court conviction exonerates a publicly tried defendant; whether or not that contention would have merit depends on whether the plaintiff has shown a particularized detriment accruing from the State's refusal to retry him.

The parties have stipulated that the record of plaintiff's prison violations, which presumably include the administrative convictions complained of, cannot be used for determination of punishment for later offenses, if any, but are available for Classification Committee and Parole Board consideration. Therefore, it is apparent that at most these records can only affect matters of administrative security status as they relate to the prisoner. The Court finds that on this basis a particularized detriment of constitutional level has not been demonstrated. The Court will not require the State to retry the plaintiff.

*Expunction*

The issue remains, therefore, as to whether such other effects as may flow from maintenance of the records of the voided administrative convictions require expunction thereof. It appears that, as recited above, said effects are limited to the possibility of adverse consideration by either the Classification Committee or the Parole Board. In determining whether the Court should exercise its equitable powers in this regard, the Court must balance the factors militating for and against expunction. The issues raised thereby are not unlike those before the Court in Kimbrough v. Duke, No. CA 843–71–R, mem. decis. (E.D.Va.1972), wherein the Court determined whether or not the court records of a voided State felony conviction ought to be expunged. As the Court noted in *Kimbrough, supra,* although determination as to the propriety of expunction must be made on a case by case basis, the remedy of expunction is not one freely applied. In the present case, the use of these records by either the Classification Committee or Parole Board may have some relevance as to the plaintiff's

attitude or security status in the same manner as unproven charges. Because the standards for such determinations are not known to the Court, and because the Court is without proper authority to interfere with those administrative decisions which are not on their face arbitrary or capricious, the Court is reluctant to expunge the records complained of.

Nevertheless, as the Court stated in *Kimbrough:* "[P]ractical problems may well face the plaintiff as a result of [such records,] and for this Court to deny some relief may compound those problems." Balancing the interests, as the Court is required to do, it would seem appropriate and equitable that there be placed on the margin of said records a note which reflects that said convictions were voided under *Landman.* Such remedy, which is properly within the Court's discretion, may serve to insure that the records are at least given the appropriate legal weight. See *Kimbrough, supra;* Knowles v. Bd. of Public Instruction of Leon County, 405 F.2d 1206 (5th Cir. 1969).

An appropriate order shall issue.